IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL HUNT,

      Plaintiff,                  No. CIV S-09-3525 FCD GGH P

      vs.

D. FIELDS, Correctional Officer,

      Defendant.               ORDER

_____/

Introduction

      Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's motion to compel supplemental discovery responses, filed on December 30, 2010, to which defendant filed an opposition on February 2, 2011, after which plaintiff filed a reply on February 11, 2011. Pursuant to the analysis below, the court will grant the motion in part and deny it in part.

Complaint

      The gravamen of this action, which proceeds on the original complaint filed on December 11, 2009 (see Docs. ## 15, 17), is that defendant Fields violated plaintiff's First Amendment right to file inmate grievances and pursue civil rights litigation. The complaint states that plaintiff was transferred to CSP-Sacramento's Facility C in August 2007 as a non-

1

gang-affiliated prisoner, and that in February or March 2008, Fields retaliated against plaintiff for filing past grievances by adding him to C-Facility's list as a Blood gang associate. (Doc. #1, hereinafter "Complaint," at ¶¶ 7, 10, 24.) As a result, plaintiff was included in lockdowns of Blood and Crip gang associates in April and June 2008, and continues to suffer restrictions and hardships as a result of being identified as a gang associate among the prison population. (Id. at ¶¶ 11, 13, 17.) Plaintiff further alleges that, after defendant Fields was served with plaintiff's complaint and summons in another legal action in August 2008, Fields retaliated by having plaintiff fired from his job assignment. (Id. at ¶ 16.) Plaintiff alleges that, due to Fields' retaliatory actions, he remains vulnerable to future lockdowns and associated injuries as a purported Blood associate. (Id. at ¶¶ 28, 29.)

Motion to Compel

Plaintiff by his motion avers that defendant's responses to his Requests for Production of Documents (hereinafter "RFPs"), Set One, Nos. 7, 8, and 9, are deficient, and asks the court to compel defendant to produce responsive documents. (Mtn. at 4-6.) He also avers that defendant's responses to his Interrogatories, Set One, Nos. 4, 5, 10, 11, 21, 22, 24, and 25 are deficient, and asks the court to compel defendant to supplement its responses to those interrogatories. (Mtn. at 6-12.) He also avers that defendant's responses to these interrogatories were untimely, and thus her objections to them should be waived. (Mtn. at 12.) Plaintiff also avers that defendant's responses to his requests for admissions (hereinafter "RFAs"), Set One, Nos. 1, 9, 11, 12, 18 and 19 are "evasive" and therefore should be deemed admissions. (Mtn. at 13-17.) He also avers that defendant's response to his request for admissions, Set Two, Nos. 3 and 4, are deficient and should be deemed admissions. (Mtn. at 15-17.)[1]

---

[1] The court rejects defendant's argument that plaintiff has failed to file or otherwise identify the discovery requests at issue pursuant to Local Rule 250(c). (Opp. at 3.) Plaintiff's motion appears to clearly indicate which discovery requests are at issue. If there are other disputed requests that plaintiff has not raised in his motion, the court makes no ruling on them here.

2

1    In opposition, defendant argues that she "did not produce documents in response
2 to nearly all of plaintiff's requests because they do not exist." She avers that other requested
3 documents could not be located, and that plaintiff's central file, which he requested, was
4 available for inspection and copying pursuant to institutional procedures, and nothing further was
5 required. (Opp. at 3.) As to the disputed interrogatories, defendant avers that she either
6 "provided straightforward, candid answers" or properly objected to those interrogatories that
7 were open-ended and vague. (Id.. at 5-6.) As to the disputed requests for admission, defendant
8 avers that, "[w]ith respect to many requests, [she], although not necessarily disputing the
9 information presented by Plaintiff, did not have personal knowledge of the events at issue" and
10 thus was in "no position to state that the information is true." Thus, "it is unreasonable . . . to
11 attempt to compel [her] to admit information she does not have." (Id. at 4.)
12    In reply, plaintiff counters that defendant has refused to supply certain documents`
13 that are in her possession, custody, and control as a CDCR employee, and he should not have to
14 go through "prison policy and procedures for the items sought." (Reply at 2.) As to the disputed
15 interrogatories, plaintiff maintains that defendant's responses are deficient and her objections
16 improper. (Id. at 4.) As to the disputed RFAs, plaintiff argues that defendant has merely stated
17 that she lacks personal knowledge of the admissions sought, without making a good faith
18 investigation or reasonable inquiry as required by her discovery obligation. (Id. at 3.)
19    The undersigned weighs these arguments below.
20 Discussion
21    I. Applicable Legal Standards
22    The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad. Discovery may be
23 obtained as to "any nonprivileged matter that is relevant to any party's claim or defense –
24 including the existence, description, nature, custody, condition and location of any documents or
25 other tangible things and the identity and location of persons who know of any discoverable
26 matter." Id. Discovery may be sought of relevant information not admissible at trial "if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The court, however, may limit discovery if it ". . . is unreasonably cumulative or duplicative," or can be obtained from another source "that is more convenient, less burdensome, or less expensive"; or if the party who seeks discovery "has had ample opportunity to obtain the information by discovery. . ..."; or if the proposed discovery is overly burdensome. Fed. R. Civ. P. 26(b)(2)(C)(I), (ii) and (iii).

A continuing issue in prisoner civil rights discovery involves the extent to which a named defendant has custody and control over documents and other information for purposes of discovery. Quite often a CDCR defendant will profess an inability to acquire agency documents on account of no custody and control, even documents prepared by that individual in the course and scope of his or her duties. Quite often this asserted inability to acquire agency documents in the discovery phase of the case somehow evaporates when it comes time for trial–the defendant seems to be able to acquire any agency document the defendant desires to proffer.

The reach of Fed. R. Civ. P. 34, which governs requests for production, "extends to all relevant documents, tangible things and entry upon designated land or other property." Clark v. Vega Wholesale Inc., supra, 181 FRD at 472-473, citing 8A C. Wright & A. Miller, Federal Practice and Procedure § 2206, at 381. Rule 34 does require that the party upon whom a request is served "be in possession, custody, or control of the requested item." Id., at 473, citing Estate of Young v. Holmes, 134 F.R.D. 291, 293 (D. Nev.1991). Under Rule 34, "[c]ontrol is defined as the legal right to obtain documents upon demand. [Citation.] The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control." U.S. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989). See also In re Citric Acid Lit., 191 F.3d 1090, 1108 (9th Cir. 1999) (discussing the same issue in a Rule 45 context).

Defendants in these type of cases quite often forget that it is important to recognize the capacity in which they are sued: sometimes individual, sometimes official, sometimes both. If

4

sued in official capacity, the degree to which the defendant has access to government documents expands exponentially in that it is well established that a suit against a named defendant in official capacity is the functional equivalent of a suit against the state. Center for Bio-Ethical Reform, Inc. v. LASD, 533 F.3d 780, 799 (9th Cir. 2008); Butler v. Elle, 281 F.3d 1014, 1023 (n.8) (9th Cir. 2002); Ruvalcaba v. City of Los Angeles,, 167 F.3d 514, 524 n.3 (9th Cir. 1999) all citing Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985). Whatever the ultimate ability of the court to order effective "CDCR" or "individual prison" injunctive relief, i.e., is the officer named as a defendant one who can command agency action, the fact remains that until such a determination is made on the merits of the case, the "official capacity" defendant remains until replaced or dismissed. The present result as it pertains to discovery is that the official capacity "state" defendant has the ability to demand state agency documents.

In this case, plaintiff did not specify in what capacity he sued the defendant. However, he did ask for injunctive relief in the complaint , including relief which exceeded a simple order vis-a-vis the named defendant to restrain individual action.[2]  Therefore, it can only be presumed that the defendant has been sued in her official capacity on account that the relief requested, at least in part, could not be obtained against an defendant in individual capacity status. Defendant's custody and control objections are therefore not meritorious.

Also, as a preliminary matter, the court addresses plaintiff's contention that, because defendant's responses were approximately eight days late, defendant's objections should be waived for untimeliness. (Mtn. at 12.) In response, defendant concedes that her responses were not served within the mandated forty-five days, but notes that, due to processing problems in the mailroom at CSP-Sacramento, she did not receive plaintiff's requests until the time for responding had come and gone. She further states that, as soon as her counsel received the discovery requests, counsel spoke with defendant and drafted responses. (Opp. at 6.) Having

---

[2][I]mplement a policy which includes [prohibition] of unlawful retaliation. Complaint at 8.

1  reviewed defendant's attached declarations (Opp., Exs. D, E), the court is satisfied that defendant
2  made a good faith effort to respond to plaintiff's interrogatories in a timely fashion.  There is little
3  this defendant's counsel could have done to anticipate mailroom problems at the prison.  Under
4  these circumstances, no objections are waived.

I.  Requests for Production of Documents

Plaintiff seeks to compel responses to RFPs, Set One, Nos. 7, 8, and 9.  The court will grant plaintiff's motion as to RFP No. 7 and deny the motion as to RFP Nos. 8 and 9.

Request For Production No. 7:

"The Inmate Interview form, you conducted with Plaintiff in 6 Block between February and March of 2008, regarding the February 7th 2008 lockdown in C-Facility in CSP-Sacramento."

(Opp., Ex. A at 4.)  Defendant objects that this request is vague and not reasonably calculated to lead to the discovery of admissible evidence.  (Id. at 4-5.)  These objections are overruled. Defendant further responded that she could not locate this document after a diligent search, but if she found it in the future, she would provide it.  (Id.)

Here, defendant is a CDCR employee who as seen from the above discussion may be presumed to have a legal right to obtain the requested record upon demand.  Moreover, the requested document is highly relevant to plaintiff's allegations.  Plaintiff alleges that,

[i]n February or March of 2008, Defendant Field learned that Plaintiff was listed in C-Facility as a non-affiliated prisoner.  On information and belief, thereafter Defendant Fields with a retaliatory motive for Plaintiff filing past grievances and lawsuit against staff added Plaintiff to C-Facility's 'list' as a Blood gang associate.

(Complaint at 3.)  Any interview that defendant conducted with plaintiff during this two-month period is likely to shed light on her basis for classifying him as a Blood gang associate (if indeed she did so), and may lead to the discovery of admissible evidence of retaliatory motive or lack thereof.  Defendant does not maintain that the alleged interview never took place, nor that this particular document does not exist.  If it does exist, it is not clear to the court why defendant would be unable to locate a document that presumably was filed as a matter of course in the

6

prison's recordkeeping system. The court therefore will grant plaintiff's motion's as to RFP No. 7 and instruct defendant to redouble her efforts to locate the document.

Request for Production No. 8:

"The CDC Form 1697 Inmate Work Supervisor's Time Log for Plaintiff between November of 2007 through August of 2008."

Opp., Ex. A at 5.) Defendant responded that documents responsive to this request are maintained in plaintiff's central file, "which is available for inspection and copying pursuant to prison policies and procedures." (Id. at 5.)

In Request for Production No. 9, petitioner requested his central file record. Defendant responded that this file was available for copying and inspection pursuant to institutional policies and procedures, and noted that "[p]laintiff should contact his Correctional Counselor to set up a time to review his central file." (Id.)

Under Rule 34(a), plaintiff has the right to request from any party production of documents "which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a)(1). However, in the context of reviewing a central file which may be performed pursuant to established policies, the court will not order defendant to produce documents that are equally accessible to both parties, and defendants is not required to provide copies to plaintiff so that plaintiff can avoid costs. Here, defendant states that the document plaintiff seeks in RFP No. 8 is included in his central file (RFP No. 9), which is available to him for inspection and copying at the prison. Plaintiff should make a request pursuant to the procedures in place at the prison. Based on the foregoing, the court shall deny plaintiff's motion as to RFPs Nos. 8 and 9.

II. Interrogatories

Plaintiff seeks to compel supplemental answers to Interrogatories, Set One, Nos 4, 5, 10, 11, 21, 22, 24, and 25. Plaintiff's motion will be granted as to Interrogatory Nos. 10, 11, 21, 22, and 24 (to the extent described below), and 25.

7

Interrogatory No. 4:

"Identify any and all records of training you have received by the CDCR, regarding the Inmate Appeal Process in accordance with CCR Title 15 § 3084.1."

Interrogatory No. 5:

"Identify any and all records of training you have received by the CDCR, regarding Inmate Access to court in accordance with CCR Title 15, § 3160(a)."

(Opp., Ex. C. at 18.)  To both of these requests, defendant objected on the grounds of vagueness as to time, overbreadth, and irrelevance.[3]  These objections are overruled.  As to No. 4, she stated: "I do not recall receiving training in the inmate appeals process."  Similarly, as to No. 5, she stated: "I do not recall receiving training in the inmate access to court."  (Id.)

Under the Federal Rules of Civil Procedure, a responding party is obligated to respond to interrogatories to the fullest extent possible, Fed. R. Civ. P. 33(b)(3), and any objections must be stated with specificity, Fed. R. Civ. P. 33(b)(4).  The responding party shall use common sense and reason. E.g., Collins v. Wal-Mart Stores, Inc., No. 06-2466-CM-DJW, 2008 WL 1924935, *8 (D.Kan. Apr.30, 2008).  A responding party is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made.  L.H. v. Schwarzenegger, No. S-06-2042 LKK GGH, 2007 WL 2781132, *2 (E.D.Cal. Sep. 21, 2007).  Further, the responding party has a duty to supplement any responses if the information sought is later obtained or the response provided needs correction. Fed. R. Civ. P. 26(e)(1)(A).  And again, an official capacity defendant has the obligation to respond not only based on personal memory, but as to institutional records as well.

Here, while defendant may not recall receiving training as to the inmate appeal process or inmates' access to the courts, it would be odd if someone in defendant's position was never provided so much as a memo about the administrative appeals process for inmates or

---

[3] Objections on the grounds that a request is "not reasonably calculated to lead to the discovery of admissible evidence" are less cumbersomely described as objections as to relevance.

8

inmates' right to file lawsuits.  Defendant must make a "reasonable effort" to unearth any such training materials she was given.  Thus, the court will grant plaintiff's motion as to Interrogatory Nos. 4 and 5.

> Interrogatory No. 10:
>
> "Prior to January of 2008, were you aware that Plaintiff filed a prison grievance with prison officials at CSP-Sacramento against you alleging unlawful retaliation for filing prison grievances and pursuit of civil rights litigation in court by filing false reports of gang affiliation?  If so, state:
>
> a. The date when [you] became aware;
>
> b. Identify each such person(s) by name, rank and job title and location whom made you aware[;]
>
> c. Identify any documents, reports or writing used to make you aware."

(Opp., Ex. C. at 19-20.)  Defendant's response consisted of the following statement: "I'm uncertain as to the date, but became aware that Plaintiff had filed a grievance when I received the paperwork from the litigation office."  (Id. at 20.)  This response evidences no effort on defendant's part.  Were defendant to review the "paperwork from the litigation office," she could provide a more complete answer to Interrogatory No. 10.

> Interrogatory No. 11:
>
> "Prior to January 2008, were you aware or made aware by prison officials at CSP-Sacramento each decision made regarding Plaintiff's prison grievance filed against you alleging unlawful retaliation on April 19, 2007?  If so, state:
>
> a. The dates each time you became aware;
>
> b. Identify each such person(s) by name, rank and job title and location whom made you aware;
>
> c. Identify any documents, reports or writing used to make you aware."

(Opp., Ex. C. at 20.)  Defendant again responded with the following statement: "I'm uncertain as to the date, but became aware that Plaintiff had [f]iled a grievance when I received paperwork

from the litigation office." (Id.) Here too, defendant's response suggests that she did not review any pertinent records that could supply the requested information. Thus the court will grant plaintiff's motion as to Interrogatory Nos. 10 and 11.

Interrogatory No. 21:

"Do you contend that the alleged conduct contained in Plaintiff's complaint were not retaliatory motivated? If so, [state] each fact, person, and document that support your contention.

Interrogatory No. 22:

"Do you contend that the alleged conduct contained in Plaintiff's complaint served a legitimate penological goal of the CDCR? If so, [state] each fact, person, and document that support your contention.

(Opp., Ex. C at 23-24.) Defendant objected to these interrogatories on the grounds that they are vague, ambiguous, compound, presume as true facts that have not been established as true, call for a legal conclusion, and are not reasonably calculated to lead to the discovery of admissible evidence. These objections are waived and overruled. "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]" Fed. R. Civ. Proc. 33(a)(2). The court will grant plaintiff's motion as Interrogatory Nos. 21 and 22.

Interrogatory No. 24:

"Were there in existence on or prior to the dates of the alleged conduct in Plaintiff's complaint, an[y] internal administrative procedures designed to discipline employees for unlawful retaliation against inmates for filing prison grievances or pursuing civil rights litigation in court? If so, state:

a. The nature and authority for such policy;

b. The person or persons responsible for implementing such policy;

c. Specify how such policy or procedures are initiated;

d. Describe the full range of penalties in such procedures."

////

10

Opp., Ex. C. at 24-25.) Defendant objects that the request is vague, ambiguous, compound, presumes as true facts that have not been established as true, calls for a legal conclusion, and is not reasonably calculated to lead to the discovery of admissible evidence. (Id. at 25). The court will overrule defendant's objections, in part, find that the subparts are somewhat vague, and grant plaintiff's motion as Interrogatory No. 24 to the following extent: Defendant is ordered to set forth all CDCR or CSP-Sacramento policies or procedures that existed on or prior to the date of the alleged conduct that concerned employees' unlawful retaliation against inmates for protected First Amendment activities.

Interrogatory No. 25:

"Identify each affirmative defense alleged in your answer that you are personally raising or relying upon and state:

a. All facts upon each defense is based;

b. The names, job titles or rank and location of each person having knowledge of each fact specified in subpart 'a' of this interrogatory;

c. Identify each and every document or writing upon which each such affirmative defense is based;

d. The name, job title and current location of each person having possession, care and custody of each document identified in subpart 'c' of this category."

(Opp, Ex. C at 25.) Defendant objected that this request was vague, overly broad, compound, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further stated that the investigation into plaintiff's allegations had not been completed. (Id. at 26.) This is a very intelligible interrogatory, and defendants should be able to pinpoint the bases of their affirmative defenses at this point (July 2011) in this 2009 litigation. These are boilerplate objections which are overruled. Thus plaintiff's motion will be granted as to Interrogatory No. 25.

////

////

III. Requests for Admission

Plaintiff seeks an order deeming admitted RFAs, Set One, Nos. 1, 9, 11, 12, 18, and 19; and Set Two, Nos. 3 and 4. The court in its discretion will not deem any of the RFAs admitted. Again, problems in *plaintiff's* mailroom should not inure to the detriment of this defendant. However, the undersigned will order, or not, amended responses to the disputed RFAs as follows:

> Request for Admission No. 1:
>
> "ADMIT that Plaintiff was transferred from B-Facility to C-Facility at CSP-Sacramento in August of 2007, as a non-affiliated prisoner."
>
> Response to Request to Admission No. 1:
>
> Defendant objects to this request on the grounds that it is compound, vague, and ambiguous. Defendant has no personal knowledge of date [sic] Plaintiff was transferred from B-Facility to C-Facility, but a review of plaintiff's movement history shows that he was transferred on July 13, 2007. To my knowledge Plaintiff has always been affiliated with the Bloods disruptive group. Except as admitted, the request is denied.

(Opp., Ex. B at 9.) Defendant objects that this RFA is compound, vague, and ambiguous. (Id.) These objections are overruled.

Generally, Federal Rule of Civil Procedure 36(a) requires one of three answers to an RFA: (1) an admission; (2) a denial; or (3) a statement detailing why the answering party is unable to admit or deny the matter. Fed. R. Civ. P. 36(a)(3); Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242 (9th Cir.1981). A treatise instructs that

> [t]he responding party is required to undertake a 'good faith' investigation of sources reasonably available to him or her in formulating answers to RFAs (similar to the duty owed in responding to interrogatories; [citation]). [Adv. Comm. Notes to 1970 Amendment to FRCP 36(a)] Stated otherwise, the responding party must make 'a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control.' [Bouchard v. United States (D ME 2007) 241 FRD 72, 76; Henry v. Champlain Enterprises, Inc. (ND NY 2003) 212 FRD 73, 78].

12

The Rutter Group, Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Ch. 11(IV)-D, 11:2047 (2011).

Again, the fact that this defendant is sued in her official capacity emphasizes the need for her to consult official sources.

In response to RFA No. 1, defendant admits that plaintiff was transferred to C-Facility in July 2007 (as opposed to August 2007), but denies that he was transferred as a non-affiliated prisoner because "[t]o my knowledge [he] has always been affiliated with the Bloods disruptive group." The court is troubled by the second part of this response because the crux of plaintiff's complaint is that defendant arranged to have his classification changed from non-affiliated to gang-affiliated in the spring of 2008 in retaliation for his protected First Amendment activities. In RFA No. 1, plaintiff sought to establish that, as of summer 2007, he was classified as non-affiliated; and rather than checking prison records to determine when, if ever, plaintiff's gang affiliation status changed, defendant disingenuously replied that, "to [her] knowledge," he has always been gang-affiliated. But defendant's unaided recollection is not a sufficient basis on which to deny this key fact. Thus, defendant will be ordered to serve an amended response to this RFA.

Request for Admission No. 9:

"ADMIT that on April 22, 2008, Plaintiff was in lockdown at C-Facility at CSP-Sacramento as a Blood disruptive group associate."

Response to Request for Admission No. 9:

Defendant admits there was a lockdown, but I did not make a list of those inmates who were to be locked down. Except as admitted the request is denied.

(Opp., Ex. B at 11.) Defendant will be ordered to serve an amended response that clarifies whether Blood gang-affiliated inmates were locked down on April 22, 2008, as this fact presumably can be determined from prison records available to her. If these or any other prison records available to defendant indicate that plaintiff himself was in lockdown on that date (e.g., records showing that plaintiff was classified as a Blood gang member on that date, in conjunction

13

1  with records showing that Blood gang members were locked down on that date), defendant's
2  response should convey as much by admitting the RFA in its entirety.
3          To the following requests, defendant responded that she lacked "sufficient
4  information and belief to form an opinion as to the truth of the matter asserted," and denied the
5  request on that basis:

        <u>Request For Admission No. 11</u>:

        "ADMIT that on June 3, 2008, Plaintiff was in lockdown in C-Facility at CSP-Sacramento as a Blood disruptive group associate."

        <u>Request for Admission No. 12</u>:

        ADMIT that on July 1, 2008, the Warden at CSP-Sacramento granted in part, Plaintiff's prison grievance filed on April 25, 200 that Plaintiff not be retaliated against for filing prison grievances."

        <u>Request for Admission No. 18</u>:

        "ADMIT that plaintiff has exhausted all of his available administrative remedies within the prison system with regard to the claims in Plaintiff's complaint."

        <u>Request for Admission No. 19</u>:

        "ADMIT that the following documents, copies of which are attached to this request as exhibits, are genuine and what they appear to be: [lists six CDC and C-Facility documents and a Notice of Service Form USM-285].

(Opp., Ex. B at 11-13.)

        In <u>Asea</u>, <u>supra</u>, the Ninth Circuit held that

        a response which fails to admit or deny a proper request for admission does not comply with the requirements of Rule 36(a) if the answering party has not, in fact, made 'reasonable inquiry,' or if information 'readily obtainable' is sufficient to enable him to admit or deny the matter. . .. Although the district court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed, this determination, like most involved in the oversight of discovery, is left to the sound discretion of the district judge.

669 F.2d at 1246-1247. In the above responses, defendant technically "denied" the RFAs, but

also stated that she lacked sufficient information to form any opinion as to their truth. Nowhere did she indicate that she made reasonable inquiries or reviewed readily obtainable information that would have aided her in determining the truth of the matters at issue, as required by <u>Asea</u>. Thus defendant will be ordered to provide amended responses to RFA Nos. 11, 12, and 18. As to RFA No. 19, defendant avers in her opposition to the motion that, while not "necessarily disputing the authenticity" of the documents, she cannot authenticate them because they are not in her possession, custody or control. (Opp. at 4.) The court has already ruled on this matter and plaintiff will be required to further respond to this request for admission.

Plaintiff also challenges defendant's responses to RFAs, Set. Two, Nos. 3 and 4. In briefing this motion, neither party has attached Set Two of plaintiff's RFAs and responses. Thus the court will rely on plaintiff's accuracy in setting forth the disputed RFAs as follows:

In RFA No. 3 (Set Two), plaintiff requested that defendant "[a]dmit that the Hiring Authority at CSP-Sacramento does not have the authority to remove Plaintiff from his assigned work program." In response, defendant objected to this request on the ground that it was vague and ambiguous as to the term "hiring authority." (<u>See</u> Mtn. at 16.) The undersigned agrees.

In RFA No. 4 (Set Two), plaintiff requested that defendant "[a]dmit that the Hiring Authority at CSP-Sacramento has no custom or policy for investigating and disciplining staff based upon allegation [sic] of unlawful retaliation against an inmate for filing prison grievance or pursuing civil rights litigation in court." In response, defendant objected on the grounds that the request was vague and ambiguous as to the term "hiring authority," was compound, and was not reasonably calculated to lead to the discovery of admissible evidence. (<u>See</u> Mtn. at 16.) The court agrees that the term "hiring authority" is vague. Thus plaintiff's motion will be denied as to RFA Nos. 3 and 4 (Set Two).

Accordingly, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to compel supplementary discovery responses, filed December 30, 2010 (Doc. #24), is granted in part and denied in part, as follows:

15

    (a) GRANTED as to RFP, Set One, No. 7;

    (b) DENIED as to RFP, Set One, Nos. 8 and 9;

    (c) GRANTED as to Interrogatories, Set One, Nos. 4, 5, 10, 11, 21, 22, 24 (as modified above) and 25;

    (d) GRANTED as to RFA, Set One, Nos. 1, 9 (as modified above), 11, 12, 18 and 19 insofar as the court orders defendant to provide supplementary answers to these RFAs, as set forth above; and DENIED as to Set Two, Nos. 3, and 4.

    2. As to those requests for which plaintiff's motion has been granted, defendant will have twenty-one (21) days to serve her supplemental responses/production and to file proof of service thereof in this court. Defendant may not, in her amended responses, raise untimely objections to any of the requests that are the subject of this order.

DATED: July 8, 2011

           /s/ Gregory G. Hollows
           UNITED STATES MAGISTRATE JUDGE

GGH:014
hunt3525.mtc