1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MICHAEL A. HUNT,

11                    Plaintiff,                    No. 2:09-cv-3525 KJM GGH P

12            vs.

13    D. FIELDS, Correctional Officer,            ORDER and

14                    Defendant.                   FINDINGS and RECOMMENDATIONS

15    _____/

16            Plaintiff is a state prisoner proceeding pro se and in forma pauperis, and seeks

17    relief pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds on his complaint filed December 11,

18    2009, in which he alleges that defendant Fields retaliated against him in violation of his First

19    Amendment rights.  Plaintiff seeks monetary and injunctive relief.

20            Plaintiff has moved for summary judgement (Doc. No. 35), which defendant

21    opposes (Doc. No. 48).  Defendant has also moved for summary judgment, and to dismiss the

22    complaint for failure to exhaust under Federal Rule of Civil Procedure 12(b) (Doc. No. 45),

23    which the plaintiff opposes (Doc. No. 51).[1]  For the reasons outlined below, the undersigned

24    _____

25        [1]  On July 12, 2012, the court ordered that plaintiff be provided with notice of the
      requirements for filing an opposition to a motion for summary judgement, pursuant to the
26    decisions of the Court of Appeals for the Ninth Circuit in Woods v. Carey, 684 F.3d 934 (9th Cir.
      2012), Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry,

1  recommends that the motion to dismiss be denied, and that the summary judgment motions be

2  denied in part, and granted in part.

3                      Motion to Strike (Doc. No. 52)

4                      Plaintiff has moved to strike certain documents submitted by defendant in camera,

5  arguing that they are irrelevant, or otherwise prejudicial.  The court will determine this motion

6  first, before turning to the merits of the dispositive motions.

7                      The documents submitted in camera which plaintiff seeks to exclude are

8  confidential documents from plaintiff's central file which document his gang affiliation activity.

9  Plaintiff appears to allege that the documents should be stricken because, under the Ninth

10  Circuit's decisions in Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003), and Hines v. Gomez, 108

11  F.3d 265 (9th Cir. 1997), the "some evidence" standard does not apply to retaliation claims.

12  Plaintiff appears to argue that defendant should not be allowed to use his central file documents

13  to establish that there is "some evidence" to support defendant's allegedly retaliatory behavior of

14  changing plaintiff's gang affiliation.

15                      In the Bruce case, defendants had actually validated the prisoner based on

16  evidence that was previously determined to be insufficient to conclude that the prisoner was a

17  gang member.  That evidence, "while not conclusive of a retaliatory motive, tends to show that

18  the validation was not motivated by any recent gang activity on [plaintiff's] part."  See Bruce,

19  351 F.3d at 1288.  Defendants then argued that the district court's decision to grant summary

20  judgment should be upheld because the record included "some evidence" of the plaintiff's gang

21  affiliation.  Id. at 1289.  The Ninth Circuit concluded that summary judgment on the retaliation

22

23  849 F.2d 409 (9th Cir. 1988).  See Doc. No. 55.  Although plaintiff had already filed an
    opposition, the court ordered that plaintiff receive an additional 21 days in which to file a
24  supplemental opposition, if he chose to do so.  Id.  During this 21-day period, the court extended
    the supplemental opposition deadline in order to give plaintiff an opportunity to respond to an
25  exhibit submitted by the defendant in camera.  See Doc. No. 56.  By the court's calculation, the
    extended supplemental opposition period expired on August 23, 2012, and to date, plaintiff has
26  not filed a supplement.  Accordingly, the court proceeds on the briefs originally submitted.

claims was in that instance inappropriate, because the plaintiff had raised a jury issue that the stated penological goals – stopping prison gang activity – were not legitimate, even though plaintiff "*arguably* ended up where he belonged."  Id.

However, there is nothing in Bruce or in Hines which requires this court to exclude evidence documenting plaintiff's gang affiliations, or to find that documents from plaintiff's own file are irrelevant.  Moreover, plaintiff has not been validated as a gang member. Instead, this court reads the cases to provide guidance about the appropriate weight this court must give the evidence.

As to plaintiff's other grounds, plaintiff has failed to articulate sufficient support for his claims that the documents are prejudicial or a waste of time.  The motion to strike is denied.

### Background

The following facts are undisputed, unless otherwise noted.

At all times relevant, plaintiff was a state prisoner in the custody of the California Department of Corrections ("CDCR") housed at California State Prison at Sacramento ("CSP-Sac").  Plaintiff's Undisputed Facts ("PUF"), ¶ 2; Defendant's Undisputed Facts ("DUF"), ¶ 1. At all times relevant, defendant was an employee of the CDCR, and held the position of Correctional Officer assigned to CSP-Sac. PUF, ¶ 3; DUF, ¶ 2.

In January 2000, plaintiff was identified as the "shot caller" for the Sac Town 916 Mob, a Blood street gang.  DUF, ¶ 4.

On March 3, 2004, plaintiff filed a civil rights complaint alleging that his due process rights were violated when a correctional officer named S. Vance improperly placed plaintiff's name on a list of suspected Blood gang members, associates, or sympathizers.  DUF, ¶ 5.  According to the Findings and Recommendations entered by the magistrate judge in the 2004 action, plaintiff's inmate grievance regarding plaintiff's subsequent lockdown was granted in part by a correctional sergeant, who stated he had:

> Conducted a review of your Central File and could not find any reference or documentation for your being listed as a member of the blood disruptive group or any other gang/disruptive group.  Accordingly, I have directed staff to change your designation on all yard listings as being non-affiliated.

See Hunt v. McKay, 2:04-cv-0435 LKK JFM P, Doc. No. 81 at 5; DUF, ¶ 5, Exhibit C.

In January 2005, plaintiff was identified as a respected affiliate of the Sacramento Bloods.  DUF, ¶ 6.

In January 2007, plaintiff was observed participating in a large meeting held by "known gang members from all the disruptive groups."  See DUF, ¶ 7, Exhibit B, at 13. According to a memo documenting the meeting authored by Sgt. Rios, plaintiff claimed that

> he is a non-affiliated inmate and has been informed by me and other yard staff that his association with any validated/self-admitted disruptive group members could be grounds to validate him as a disruptive group member. A review of HUNTS central file reveals that he has no information other than Confidential reports that implicate him as an associate of the Bloods disruptive group.

See DUF, Ex. B, at 13.

In February 2007, defendant submitted a general chrono documenting her observations of plaintiff on the yard.  DUF, ¶ 10, Ex. A.  In particular, defendant noted that she had observed plaintiff "to mainly associate with inmates identified as Sacramento Bloods (Black disruptive group.)" Id.

In April 2007, plaintiff filed a grievance regarding Sgt. Rios' January 2007 memo, and defendant's February 2007 chrono.  DUF, ¶ 11; PUF, ¶ 6;  Declaration of Michael Hunt ("Hunt Decl."), Doc. No. 36, Ex. E.  The grievance was partially granted at the second level, but dismissed at the director's level as untimely.  DUF, ¶¶ 12-15.

In July 2007, plaintiff was transferred from B-Facility to C-Facility at CSP-Sac. PUF, ¶ 4; DUF, ¶ 16.  Sometime in January 2008, defendant was re-assigned from B-Facility to C-Facility, and later became work supervisor of the C-Facility inmate recycle crew where plaintiff was assigned to work.  PUF, ¶ 5; DUF, ¶ 17.  As such, defendant was plaintiff's direct

supervisor.  DUF, ¶ 17.

In September 2007, plaintiff was identified by another inmate as being a member or associate of the Sacramento Bloods disruptive group.  DUF, ¶ 9.

On January 25, 2008, plaintiff filed a civil rights complaint against defendant and other staff members at CSP-Sac (Hunt v. Reyes, No. 2:08-cv-0181 MCE CKD), alleging that defendants unlawfully retaliated against plaintiff for filing prison grievances and pursuing civil rights litigation by filing false reports of gang membership in plaintiff's central file.  PUF, ¶ 8; DUF, ¶ 24.

On February 7, 2008, a riot incident occurred in C-Facility involving Asian and Black inmates.  PUF, ¶ 9; Hunt Decl., Ex. J.  Prison officials issued a program memorandum, notifying staff and inmates that all Asian and Black inmates were placed on lockdown status.  Id. Plaintiff, who is black, appears on the lockdown list.  Id.  His affiliation is listed as "Non."  Id.

On April 22, 2008, an incident occurred in C-Facility involving Blood and Crip gang members.  PUF, ¶ 11; DUF, ¶ 18, Ex. E.  Prison officials issued a program memorandum which read that "all inmates identified and/or designated as suspected associates of the disruptive groups Crips, Bloods, and those celled with them, are on lockdown status."  Id.  Plaintiff's name appeared on the April 22, 2008 lockdown list, where he is designated as Blood gang-affiliated. DUF, ¶ 19, Ex. F; PUF, ¶ 11.  Plaintiff lost work, yard and outdoor exercise, visiting, use of the law library, and privileges while on lockdown.  PUF, ¶ 11.

On April 25, 2008, plaintiff filed a grievance concerning his lockdown on April 22, 2008, denying that he is a Blood associate or suspected associate.  PUF, ¶ 13; DUF, ¶ 20; DUF, Ex. A at 14.  On July 1, 2008, in his second level response, the Warden noted that plaintiff's central file included five separate chronos or memoranda identifying plaintiff as associating with known Blood disruptive group members and associates.  See DUF, Ex. A at 19. The Warden noted that "there may not be enough information to actually ***validate*** you as a Blood; however, the Confidential Chrono and numerous Memorandums can still document your

1  suspected affiliation with the disruptive group 'Bloods', and therefore, will not be changed." <u>Id.</u>

2  On November 17, 2008, the Director denied plaintiff's Director's Level appeal.  <u>See</u> DUF, Ex. A

3  at 21.

4          Plaintiff's April 25, 2008 grievance does not allege that defendant was responsible

5  for placement of plaintiff's name on the lockdown list.  DUF, ¶ 21; DUF, Ex. A at 14.[2]

6          On June 3, 2008, a riot incident occurred in C-Facility involving Blood gang

7  members.  PUF, ¶ 15.  Prison officials issued a program memorandum and a list of inmates to be

8  locked down.  <u>Id.</u>  Plaintiff's name appears on the list and he is designated as Blood gang-

9  affiliated.  As a result, plaintiff lost privileges while lockdown segregated.  <u>Id.</u>

10          On July 2, 2008, defendant was notified by Cindy Scholl in the Litigation Office

11  at CSP-Sac that defendant had been named in a lawsuit.  DUF, ¶ 25.  When defendant discovered

12  that plaintiff had filed the suit, defendant advised Ms. Scholl that she was plaintiff's direct

13  supervisor.  DUF, ¶ 26.  Defendant explained that she was concerned that if plaintiff were injured

14  on the job, it might appear to be intentional.  <u>Id.</u>  Ms. Scholl advised defendant that she would

15  take the matter up the chain of command.  DUF, Ex. D, Declaration of D. Fields ("Fields Decl."),

16  ¶ 9.

17          Ms. Scholl advised the Chief Deputy Warden of the situation concerning

18  plaintiff's job assignment, and the Chief Deputy Warden had plaintiff assigned to another

19  position.  DUF, ¶ 27; DUF, Ex. H, Declaration Of C. Scholl, ¶¶ 5-6.  Plaintiff remained on the

20  recycling crew until August 29, 2008.  DUF, ¶ 29.  Plaintiff was later reassigned to work in the

21  pantry, but he refused to report for work.  DUF, ¶ 30.  Plaintiff was later reassigned to the

22  upholstery work center, where he worked until January 23, 2010.  <u>Id.</u>

23  \\\\\\

24

25     [2]  The Director's Level decision describes plaintiff's position as being that "institutional
staff at California State Prison-Sacramento (SAC) have incorrectly identified him as a suspected

26  associate of the Blood disruptive group."  <u>See</u> DUF, Ex. A at 21.

1    On August 29, 2008, plaintiff filed a grievance alleging that he was fired and re-

2    assigned from his recycle crew job in retaliation for exercising his First Amendment rights.  PUF,

3    ¶ 19; Hunt Decl., Ex. X, Doc. No. 36-1 at 32.[3]

4    On October 27, 2008, plaintiff's grievance was denied at First Level Review.

5    Hunt Decl., Ex. X, Doc. No. 36-1 at 27.  The decision reads that "[a]ccording to Officer Fields

6    she feels that she is in a compromising position having one of her assigned workers with pending

7    litigation which could result in a monetary award being awarded to you.  An Administrative

8    decision was made by the Hiring Authority to have you moved out of your yard worker position."

9    Id.

10    The Second Level Reviewer Response, dated January 21, 2009, reads that

11                [t]he SLR interviewed Officer Fields who indicated that she had not
            completed a CDCR General Chrono Form; however, the job change was
12            not based on retaliation but her level of comfort with you being assigned to
            her work crew with active litigation pending against her.  The SLR notes
13            that the CCR's state, "Any staff request for removal of an inmate from a
            program shall be submitted to the inmate's correctional counselor on a
14            CDCR General Chrono Form".  The SLR informed Officer Fields during
            the interview on the correct procedure for requesting the removal of an
15            inmate from a program.  The SLR finds that although staff did not follow
            proper procedure in having you reassigned your rights were not violated
16            and you were not subject to the loss of a pay number or work time credits.

17    Hunt Decl., Ex. X, Doc. No. 36-1 at 28-29.[4]

18    On April 14, 2009, the Director denied plaintiff's Director's Level appeal of the

19    January 21, 2009 decision.  See Hunt Decl., Ex. X, Doc. No. 36-1 at 31-32.

20    _____

21        [3] Defendant objects to this statement on the grounds that it is irrelevant.  See Doc. No.
      47, ¶ 18 (response).  Defendant's objection is overruled, if for no other reason than that plaintiff
22    must exhaust his administrative remedies before seeking relief in this court.  Defendant does not
      otherwise appear to dispute the accuracy of plaintiff's statement.

23        [4] Defendant appears to object to plaintiff's statement regarding the decision issued by the
24    Warden, alleging that it is irrelevant and that the evidence supporting it consists of inadmissible
      hearsay.  See Doc. No. 47, ¶ 19 (response).  For the reasons cited in note 2 supra, the court
25    overrules defendant's relevancy objection.  As to plaintiff's hearsay objection, the court agrees
      that plaintiff's synthesis of the decision in his statement of undisputed facts is confusing, in that
      plaintiff attributes to the warden statements made by the SLR.  The court has accordingly cited
26    the relevant portion of the Warden's decision, and overrules defendant's objection.

1    Plaintiff initiated the current action by filing a complaint on December 11, 2009.

2    <u>Summary Judgment Standards Under Rule 56</u>

3    Burdens on summary judgment motion differ depending on who will carry the

4    burden of persuasion at trial.  "As the party with the burden of persuasion at trial, the [moving

5    party] must establish "beyond controversy every essential element of its' [ ] claim. [The

6    nonmoving party] can defeat summary judgment by demonstrating the evidence, taken as a

7    whole, could lead a rational trier of fact to find in its favor."  <u>Southern California Gas Co. v. City</u>

8    <u>of Santa Ana</u>, 336 F.3d 885, 888 (9th Cir. 2003).

9    Summary judgment is appropriate when it is demonstrated that there exists "no

10   genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

11   law."  Fed. R. Civ. P. 56(c).

12   > Under summary judgment practice, the moving party
13   > always bears the initial responsibility of informing the
     > district court of the basis for its motion, and identifying
14   > those portions of "the pleadings, depositions, answers to
     > interrogatories, and admissions on file, together with the
     > affidavits, if any," which it believes demonstrate the
15   > absence of a genuine issue of material fact.

16   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

17   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

18   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

19   depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment

20   should be entered, after adequate time for discovery and upon motion, against a party who fails to

21   make a showing sufficient to establish the existence of an element essential to that party's case,

22   and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552.

23   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

24   necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment

25   should be granted, "so long as whatever is before the district court demonstrates that the standard

26   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323, 106 S. Ct. at

1    2553.

2           If the moving party meets its initial responsibility, the burden then shifts to the

3    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

4    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

5    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

6    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

7    specific facts in the form of affidavits, and/or admissible discovery material, in support of its

8    contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

9    106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

10   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

11   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

12   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

13   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

14   nonmoving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. at 249, 106 S.Ct. at 2511.

15          In the endeavor to establish the existence of a factual dispute, the opposing party

16   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

17   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

18   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

19   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

20   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

21   56(e) advisory committee's note on 1963 amendments).

22          In resolving the summary judgment motion, the court examines the pleadings,

23   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

24   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

25   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

26   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  See Richards

v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

(9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

Plaintiff's Motion for Summary Judgement

*The April 22, 2008 Lockdown*

Plaintiff alleges that defendant changed plaintiff's gang affiliation from non-

affiliated to Bloods gang-affiliated because he had previously filed grievances and civil actions.

See Doc. No. 35 at 6; PUF, ¶ 10.  Plaintiff does not cite to any direct evidence that defendant

changed his designation, but rather "believes [that] she put me on that list," based on two

conversations he had with prison staff.  See PUF, ¶¶ 12, 14; Hunt Decl., ¶¶ 9-14, Ex. M

(Deposition of Michael Hunt, taken October 21, 2010, at 32:19-23).

According to plaintiff, on April 23, 2008, plaintiff asked a floor officer Moore

why he was locked down, and was told that it was because "they had [Plaintiff] down as a

Blood..."  PUF, ¶12; Hunt Decl. ¶ 11.  Officer Moore further advised plaintiff that he would

"have to get with Officer Fields to find out what's going on when you come off lockdown."  Id.

Plaintiff further declares that, during his interview with Sergeant Engellenner

regarding his grievance about the affiliation change, the sergeant advised him that "Officer Fields

verified she seen you in an area frequented by Bloods and that she seen you talking to Bloods."

PUF, ¶ 14; Hunt Decl., ¶ 14.

Plaintiff argues that he was harmed as a result of the placement because he was

designated as a gang member without cause "in a violent prison environment."  See Doc. No. 35

at 11.  Plaintiff further alleges that defendant's actions did not further a legitimate penological

1   goal, because she did not follow CDCR policy and procedures for having plaintiff validated as a

2   gang member.  See id. at 12.

3              Defendant opposes plaintiff's motion, arguing that plaintiff has failed to establish

4   any elements essential to his case, and specifically fails to establish that defendant took part in an

5   adverse action, or that defendant's actions were not based on a legitimate penological interest.

6   See Doc. No. 48 at 2.  Defendant also notes that she is without authority to make such a change.

7   DUF, ¶ 22; Ex. D, Fields Decl. at ¶ 5.  Instead, according to defendant, a change in an inmate's

8   gang affiliation or association is generally made by a member of the Institutional Gang

9   Investigation Unit.  Id.

10              Relevant Authority

11              The Ninth Circuit recently reiterated the five elements of a retaliation claim,

12   specifying what a plaintiff must allege in order to defeat a motion to dismiss for failure to state a

13   claim:

>First, the plaintiff must allege that the retaliated-against conduct is
>protected.  The filing of an inmate grievance is protected conduct.  Rhodes
>v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  Second, the plaintiff must
>claim the defendant took adverse action against the plaintiff.  Id. at 567.
>The adverse action need not be an independent constitutional violation.
>Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  "[T]he mere *threat* of
>harm can be an adverse action...."  Brodheim [v. Cry], 584 F.3d [1262,] at
>1270 [9th Cir. 2009].
>
>Third, the plaintiff must allege a causal connection between the adverse
>action and the protected conduct.  Because direct evidence of retaliatory
>intent rarely can be pleaded in a complaint, allegation of a chronology of
>events from which retaliation can be inferred is sufficient to survive
>dismissal.  See Pratt, 65 F.3d at 808 ("timing can properly be considered
>as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833
>F.2d 106, 108-09 (7th Cir. 1987).
>
>Fourth, the plaintiff must allege that the "official's acts would chill or
>silence a person of ordinary firmness from future First Amendment
>activities."  Robinson, 408 F.3d at 568 (internal quotation marks and
>emphasis omitted).  "[A] plaintiff who fails to allege a chilling effect may
>still state a claim if he alleges he suffered some other harm," Brodheim,
>584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568
>n.11.  That the retaliatory conduct did not chill the plaintiff from suing the
>alleged retaliator does not defeat the claim at the motion to dismiss stage.

Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985).  A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, <u>id.</u>, or that they were "unnecessary to the maintenance of the institution." <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1230 (9th Cir. 1984).

<u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012).

                    <u>Analysis</u>

          In this case, plaintiff is not entitled to summary judgment on his affiliation retaliation claim because he has met his burden to show that defendant changed his gang affiliation, and even if defendant did so, that such action was not related to a legitimate penological goal.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322, 106 S.Ct. at 2552.

          Plaintiff instead relies on his belief that defendant changed his affiliation, citing two conversations he had with other prison staff.  However, even if these conversations are admissible, they are not evidence that defendant was responsible for his name appearing on the list.[5]  Instead, these conversations suggest that defendant had previously written a chrono about plaintiff's gang-related associations and that she was interviewed in connection with plaintiff's April 25, 2008 grievance.  Neither conversation is evidence that defendant had plaintiff's affiliation changed, or had him added to the lockdown list.

          Even if defendant did add plaintiff to the lockdown list, plaintiff has failed to establish that such action would not advance a legitimate penological goal.  The Ninth Circuit has previously identified prison security as a "compelling governmental interest."  <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 998 (9th Cir. 2005).  While plaintiff argues that defendant violated prison policy by not following gang validation procedures, <u>see</u> Doc. No. 35 at 12, and is thus

_____

          [5]  The court notes that neither party has explained how plaintiff's name came to appear on the lockdown list, or how his gang affiliation came to be changed.  Instead, the record reflects that, on April 22, 2008, all designated or "suspected associates" of Bloods and Crips were to be locked down due to a prison riot, and that plaintiff has had contact with the Blood gang since 2000, which contact has been documented by several sources.

precluded from arguing that her actions were taken in furtherance of a valid penological purpose, his argument is inapposite, as plaintiff was not validated as a gang member – he was instead locked down as a suspected gang affiliate.

Accordingly, plaintiff is not entitled to summary judgment on his retaliation claim made in connection with the April 22, 2008 lockdown.

### The August 28, 2008 Work Assignment Transfer

Plaintiff alleges that defendant, who was plaintiff's direct supervisor, had plaintiff removed from plaintiff's job on defendant's recycle crew after she was served with a copy of his civil action naming her, among others, as a defendant.  Plaintiff argues that he was harmed because he suffered damage to his reputation and loss of "job-pay opportunities."  See Doc. No. 35 at 11.

Plaintiff argues that defendant's actions were not related to a legitimate penological interest because defendant did not follow proper procedure for having plaintiff removed from his job assignment.  See Doc. No. 35 at 12.

Defendant opposes plaintiff's motion, arguing that plaintiff has failed to establish any elements essential to his case, and specifically fails to establish that defendant took part in an adverse action, or that defendant's actions were not based on a legitimate penological interest. See Doc. No. 48 at 2.

### Analysis

The record reflects that, after defendant voiced concerns about plaintiff remaining on her work crew after he filed suit against her, plaintiff was transferred to a new position:

> Defendant was served with a copy of plaintiff's lawsuit in July or August 2008.  Defendant mentioned to the Staff Services Analyst in the litigation office was Plaintiff was on Defendant's work crew.  The analyst reported the information to the Chief Deputy Warden, who had plaintiff reassigned to another position.

Defendant's Response to Plaintiff's Statement of Undisputed Facts, Doc. No. 47, at ¶ 16.

\\\\\

1       While defendant argues that she is not responsible for the transfer because it was

2  actually Deputy Warden Virga who made the change, there is no dispute that plaintiff was

3  transferred <u>after</u> defendant expressed her concerns and, arguably, because defendant so expressed

4  herself.  <u>See</u> Hunt Decl., Ex. X, Doc. No. 36-1 at 29 ("....the job change was not based on

5  retaliation but [defendant's] level of comfort with you being assigned to her work crew with

6  active litigation pending against her...."), Doc. No. 36-1 at 27 (defendant "feels she is in a

7  compromising position....").

8       California regulations require that "[a]ny staff request for removal of an inmate

9  from a program shall be submitted to the inmate's correctional counselor on a CDC General

10 Chrono Form."  Cal. Code Regs. tit. 15, § 3040(f).  There is no dispute that, in this case,

11 defendant did not submit a General Chrono form requesting plaintiff's transfer.  <u>See</u> Hunt Decl.,

12 Ex. X, Doc. No. 36-1 at 29.  Defendant's failure to do so may render the transfer arbitrary and

13 capricious.  <u>See</u> <u>Watison v. Carter</u>, 668 F.3d at 1115 (prisoner alleged arbitrary, capricious and

14 retaliatory conduct against officials who filed false disciplinary charges and made false

15 statements to parole board).  However, the mere non-use of a required form does not <u>per se</u> prove

16 retaliation.  Accordingly, the court cannot determine, on the current record, whether there was a

17 legitimate penological reason for the action.

18      The parties additionally dispute whether plaintiff was harmed by the transfer:

19 plaintiff alleges that he is afraid to accept another job assignment, and that he has suffered to his

20 reputation and to his job-pay opportunities.  <u>See</u>, <u>e.g.</u>, Hunt Decl., ¶ 21.  Defendant argues

21 instead that plaintiff failed to report for his new work assignment because he did not like it.  <u>See</u>

22 Defendant's Response to Plaintiff's Statement of Undisputed Facts, Doc. No. 47, ¶ 20 (response).

23 The record also reflects that plaintiff was working though at least 2010.  DUF, ¶ 30.

24      Accordingly, because disputes remain about whether defendant had plaintiff

25 removed from her work crew, whether the removal was retaliatory, and whether plaintiff was

26 harmed by removal, plaintiff is not entitled to summary judgment on his retaliation claim in

1    connection with the August 28, 2008 work reassignment.

2                    Defendant's Motion to Dismiss and for Summary Judgment

3                    Defendant also moves for summary judgment, arguing that (1) plaintiff has failed

4    to make the requisite showings on his retaliation claims; and (2) defendant is entitled to qualified

5    immunity.  Defendant additionally moves to dismiss the complaint under Federal Rule of Civil

6    Procedure 12(b), arguing that plaintiff failed to exhaust his administrative remedies before filing

7    suit.

8                         *Exhaustion*

9                    Defendant argues that plaintiff has not exhausted his administrative remedies, as

10   required by 42 U.S.C. § 1997e(a), and that the complaint should accordingly be dismissed.

11                   Defendant argues that plaintiff has failed to exhaust his retaliation claims because

12   his April 19, 2007 grievance was rejected at the Director's Level as untimely.  See Doc. No. 45 at

13   7-8.  Plaintiff objects, arguing that the subject matter of the April 19, 2007 grievance is not the

14   subject matter of this lawsuit, and accordingly, whether it was fully exhausted is not relevant.

15   See Doc. No. 51 at 7.  Instead, plaintiff notes, the subject matter of the current lawsuit was

16   grieved by him in appeals dated April 25, 2008 and August 29, 2008, both of which were fully

17   exhausted through the Director's Level.  Id.

18                   Defendant next argues that the April 25, 2008 grievance did not name or

19   otherwise mention any action by defendant, and accordingly did not provide enough notice to

20   exhaust the claims.  See Doc. No. 45 at 9-10.  Instead, defendant argues, the allegations in

21   plaintiff's grievance fail to put the institution on notice of the problem of which plaintiff now

22   complains with regard to defendant.  Id. at 10.  Plaintiff objects, noting that defendant was

23   interviewed during investigation of his grievance, and that it was accordingly sufficient to place

24   prison officials on notice of the problem and those responsible.  See Doc. No. 51 at 9.  Plaintiff

25   additionally notes that there is nothing in the current record "to indicate that officials would have

26   done anything differently if Plaintiff would have pursued a more specific claim naming

                                          15

1  Defendant Fields, unless someone else was responsible." Id.

2         Relevant Authority

3         The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to

4  provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §

5  1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

6  facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

7  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S.

8  516, 524, 122 S.Ct. 983, 152 L. Ed.2d 12 (2002).  Exhaustion is a prerequisite for all prisoner

9  suits regarding the conditions of their confinement, whether they involve general circumstances

10  or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534

11  U.S. at 532.

12         The State of California provides its prisoners the right to appeal administratively

13  policies, decision, actions, conditions or omissions by the department or its staff that have a

14  "material adverse effect on the welfare of inmates and parolees." Cal. Code Regs. tit. 15, §

15  3084.1(a).  In order to exhaust available administrative remedies within this system, a prisoner

16  must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

17  on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4)

18  third level appeal to the Director of the CDCR. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D.

19  Cal.1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of

20  review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237–38.

21         Failure to exhaust administrative remedies is an affirmative defense properly

22  raised by a defendant in an unenumerated Fed. R. Civ. P. Rule 12(b) motion. Jones v. Bock, 549

23  U.S. 199, 216, 127 S.Ct. 910, 166 L. Ed.2d 798 (2007). If the court concludes the prisoner has

24  not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without

25  prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1119-1120 (9th Cir. 2003).  Defendants bear the

26  burden of raising and proving non-exhaustion. Id. at 1119.  The court may resolve any disputed

material facts on the exhaustion issue by looking beyond the pleadings in deciding a motion to

dismiss for failure to exhaust.  Id. at 1119–20.  No presumption of truthfulness attaches to a

plaintiff's assertions associated with the exhaustion requirement.  See Ritza v. Int'l

Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir.1988).

However, "exhaustion is not per se inadequate simply because an individual later

sued was not named in the grievances." Jones v. Bock, 549 U.S. at 219, 127 S.Ct. at 922.  "The

level of detail in an administrative grievance necessary to properly exhaust a claim is determined

by the prison's applicable grievance procedures." Jones, 549 U.S. at 218.  In California,

prisoners are required to lodge their administrative complaint on a CDC Form 602, which

requires only that the prisoner "describe the problem and action requested."  Cal. Code Regs. tit.

15, § 3084.2(a).  In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit Court of

Appeals adopted the standard enunciated by the Seventh Circuit, which provides that "when a

prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance

suffices if it alerts the prison to the nature of the wrong for which redress is sought.' " Griffin,

557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong v. David, 297 F.3d 646, 650

(7th Cir. 2002).  Thus, in California, "[a] grievance need not include legal terminology or legal

theories unless they are in some way needed to provide notice of the harm being grieved.  A

grievance also need not contain every fact necessary to prove each element of an eventual legal

claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its

resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120; accord, Morton v.

Hall, 599 F.3d 942, 946 (9th Cir. 2010).

Analysis

In this case, defendant is not entitled to dismissal on her exhaustion argument.  As

plaintiff correctly notes in his opposition, the subject matter of the April 19, 2007 grievance is

not at issue in this action – it is instead at issue in another case, Hunt v. Reyes, No. 2:08-cv-0181

MCE CKD.  The grievances which do raise the subject matter of this action – those filed on

April 25, 2008 and August 29, 2008 – appear to have been fully exhausted by plaintiff.  See Hunt

Decl., Exs. P and W, Doc. Nos. 36 at 78 and 36-1 at 31-32; DUF, Ex. A at 21.[6]  Whether plaintiff

exhausted his April 19, 2007 grievance does not appear relevant to this action.

Moreover, defendant has failed to establish that plaintiff's April 25, 2008

grievance failed to give the prison adequate notice of plaintiff's claims about his work transfer.

A review of the grievance reflects that, in his April 25, 2008 grievance, plaintiff alleged that he is

inappropriately identified as a suspected associate of a disrupted group, and does not identify any

officers as responsible.  However, the appeals decision, dated May 10, 2008, reads that the

Appeal Investigator interviewed defendant as part of his investigation:

> An interview was conducted with Correctional Officer D. Fields, C-Facility Yard Officer.  She verified that you have been observed in an area known to yard staff as a area frequented by members of the "Bloods" disruptive group.  You have also been observed engaged in conversations with known "Bloods", in both large and small groups.

Hunt Decl, Ex. P, Doc. No. 36 at 79.

Notably, according to the decision, the Appeal Investigator did not interview any

other officers.  Id.  The appeal decision accordingly suggests that, even if plaintiff did not make

prison staff aware of defendant's purported involvement, the grievance was sufficient to alert

prison staff that they needed to interview defendant as part of the investigation.  Defendant is

accordingly not entitled to dismissal on the grounds that plaintiff failed to exhaust.

### *Retaliation*

### The Affiliation Change and April 22, 2008 Lockdown

Defendant argues that she is entitled to summary judgment because plaintiff has

failed to meet his evidentiary burdens on the retaliation claims.  Specifically, defendant argues

that plaintiff has failed to show: (1) that defendant changed plaintiff's gang status, added his

---

[6]For one of the grievances, it appears that plaintiff may have attached the decision at the second level.  However, the grievance form shows a box where it indicates that the third level appeal was exhausted.

1  name to the April 22, 2008 lockdown list, or had him removed from her work crew; (2) that

2  defendant wrote her February 2007 chrono in response to plaintiff's grievances about defendant;

3  and (3) that preserving institutional order, discipline, and security are legitimate penological

4  interests sufficient to defeat plaintiff's claim since there is no evidence that defendant engaged in

5  a ruse to retaliate against plaintiff.  See Doc. No. 45 at 11-12.

6          Plaintiff objects, alleging that he has produced credible evidence to establish

7  genuine issues of material fact about whether defendant's actions were adverse, whether

8  defendant took such action because of plaintiff's protected conduct, and about whether

9  defendant's actions advanced legitimate penological goals.  See Doc. No. 51 at 11-12.

10          As noted above, the record currently includes no evidence that defendant changed

11  plaintiff's gang affiliation status or added plaintiff's name to the April 22, 2008 lockdown list.  In

12  addition, plaintiff has failed to establish that, even if defendant did add plaintiff to the lockdown

13  list, defendant's actions were arbitrary and capricious, or not otherwise related to a legitimate

14  penological goal.  Defendant is accordingly entitled to summary judgment on plaintiff's claim of

15  retaliation in connection with the affiliation change and the April 22, 2008 lockdown.

16                    The August 28, 2008 Work Transfer

17          Defendant seeks summary judgment in connection with plaintiff's claim that

18  defendant had plaintiff removed from her work crew after he filed a civil lawsuit against her.  See

19  Doc. No. 45 at 11.  As noted above, there remain disputed issues of material fact surrounding

20  whether defendant caused plaintiff to be removed from her work crew, whether plaintiff was

21  harmed by the removal, and whether defendant's actions were arbitrary and capricious, or

22  otherwise inconsistent with a legitimate penological goal.  Defendant is accordingly not entitled

23  to summary judgment in connection with plaintiff's claim of retaliation in connection with the

24  August 28, 2008 work transfer.

25  \\\\\

26  \\\\\

1        *Immunity*

2            Defendant argues that she is entitled to immunity because the undisputed facts

3    establish that defendant violated no constitutional right.  See Doc. No. 45 at 12-13.  Defendant

4    further argues reasonable persons in defendant's position could have believed that their conduct

5    was lawful.  Id. at 13.

6            Plaintiff objects, alleging that defendant is not entitled to immunity because the

7    prohibition against retaliatory punishment is clearly established.  See Doc. No. 51 at 13.

8            Generally, government officials performing discretionary functions are shielded

9    from liability for civil damages insofar as their conduct does not violate clearly established

10   statutory or constitutional rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727

11   (1982).  If the law is clearly established, the immunity defense ordinarily should fail, since a

12   reasonably competent public official should know the law governing his conduct.  Id.

13           In determining whether a government officer is immune from suit based on the

14   doctrine of qualified immunity, the court must answer two questions.  The first is, do the facts

15   alleged show that the officer's conduct violated a constitutional right?  See Saucier v. Katz, 533

16   U.S. 194, 201, 121 S. Ct. 2151 (2001).  The second is, was the right "clearly established"?  Id.  If

17   the law did not put the defendant on notice that his conduct would be clearly unlawful, summary

18   judgment based on qualified immunity is appropriate.  Id. at 202.

19           In this case, there are at least genuine issues of material fact with respect to

20   plaintiff's claim that defendant retaliated against him in violation of the First Amendment.

21   Furthermore, the law outlined above was clearly established when all of the actions relevant to

22   plaintiff's claims took place.  Therefore, defendant is not immune from plaintiff's First

23   Amendment claims under the doctrine of qualified immunity.

24           **Conclusion**

25           Accordingly, the undersigned recommends that plaintiff's motion for summary

26   judgment be denied; that defendant's motion to dismiss for failure to exhaust be denied; that

defendant's motion for summary judgment be granted as to plaintiff's first retaliation claim (regarding the affiliation change and the April 22, 2008 lockdown); that defendant's motion for summary judgment be denied as to the second claim (regarding the August 28, 2008 work re-assignment); and that defendant's arguments that she is entitled to qualified immunity be denied.

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's motion to strike (Doc. No. 52) is denied.

IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (Doc No. 35) be denied;

2.  Defendant's motion to dismiss and for summary judgment (Doc. No. 45) be denied in part and granted in part, as outlined above.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 10, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

ggh:rb
hunt3525.fr